# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA M. RILLING,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | Case No. CV 10-4601 JCG<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.
## INTRODUCTION AND SUMMARY

On June 22, 2010, plaintiff Cynthia M. Rilling ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, seeking review of a denial of disability insurance benefits ("DIB"). [Docket No. 1.]

On January 3, 2011, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 9, 10, 11.]

In sum, having carefully studied, *inter alia*, the parties' joint stipulation and the administrative record, the Court concludes that, as detailed below, there is

substantial evidence in the record, taken as a whole, to support the decision of the Administrative Law Judge ("ALJ"). Thus, the Court affirms the Commissioner's decision denying benefits.

## II.

## **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 58 years old on the date of her administrative hearing, has a college education. (*See* Administrative Record ("AR") at 23, 26, 70, 86.)

On December 29, 2005, Plaintiff protectively filed for DIB, alleging that she has been disabled since January 30, 2003, due to allergies, a hernia, ocular migraines, diverticulitis, bone spurs, and a back condition. (*See* AR at 46, 53, 70, 78, 81.)

On January 23, 2008, Plaintiff, represented by counsel, appeared and testified at a hearing before an ALJ. (*See* AR at 23-41.)

On February 28, 2008, the ALJ denied Plaintiff's request for benefits. (AR at 16-22; Joint Stip. at 2.) Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (AR at 18.)

At step two, the ALJ found that Plaintiff suffers from a severe "disorder of the musculoskeletal system." (AR at 18 (emphasis omitted).)

At step three, the ALJ determined that the evidence did not demonstrate that Plaintiff's impairment, either individually or in combination, met or medically equaled the severity of any listing set forth in the Social Security regulations.[1/] (AR at 19.)

The ALJ then assessed Plaintiff's residual functional capacity[2/] ("RFC") and

---

[1/] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[2/] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155

determined that she can perform light work. (AR at 19.)

The ALJ found, at step four, that Plaintiff has the ability to perform her past relevant work as a clerk or a teacher's aide. (AR at 22.) Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 16, 22.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 1-3, 10.) The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the

---

n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## ISSUES PRESENTED

Two disputed issues are presented for decision here:

1. whether the ALJ properly assessed Plaintiff's credibility, (*see* Joint Stip. at 17-18); and

2. whether the ALJ properly found that Plaintiff's allergies and carpal tunnel syndrome are not severe. (*Id.* at 5-11.)

The Court addresses each argument in turn.

## V.
## DISCUSSION AND ANALYSIS

A. Plaintiff's Credibility

Plaintiff argues that the "ALJ set forth three rationales by which to find that [Plaintiff's] subjective complaints are not credible, yet none of those rationales legitimately undermines her veracity." (Joint Stip. at 18.)

### 1. The ALJ Must Provide "Clear and Convincing" Reasons For Discounting Plaintiff's Credibility

An ALJ can reject a plaintiff's subjective complaint upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) his or her reputation for

4

truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ did not find evidence of malingering. (*See generally* AR at 16-22.) Therefore, the ALJ's reasons for rejecting Plaintiff's credibility must rest on clear and convincing reasons. *See Benton*, 331 F.3d at 1040.

        2.      <u>The ALJ Properly Rejected Plaintiff's Subjective Complaints</u>

The Court is persuaded that the ALJ provided clear and convincing reasons for rejecting Plaintiff's credibility. Four reasons guide this determination.

First, the ALJ found that the objective medical evidence does not support Plaintiff's alleged degree of disability. (AR at 20.) Apart from the unsubstantiated opinion of treating physician Walter D. Bramson, M.D. ("Dr. Bramson"), whose opinion the ALJ properly gave minimal weight, *see infra* at § V.B.2, Plaintiff cites to no objective medical evidence, and the Court could not locate any, supporting her extreme complaints of allergic reactions. (*See generally* Joint Stip. at 5-11, 17-18; *see, e.g.,* AR at 78-80 (field office disability report, dated December 29, 2005, reporting that during "face-to-face" interview with Plaintiff, "she seemed to have no adverse reaction to anything in the office").) Granted, a lack of objective evidence supporting Plaintiff's symptoms cannot be the sole reason for rejecting Plaintiff's testimony. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001). However, it can be one of several factors used in evaluating the credibility of Plaintiff's subjective complaints. *Id.*

Second, the ALJ properly discounted Plaintiff's complaints regarding the severity of her symptoms as inconsistent with a conservative treatment plan. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered, as part of credibility evaluation, treating physician's failure to prescribe, and claimant's

failure to request, medical treatment commensurate with the "supposedly excruciating" pain alleged, and the "minimal, conservative treatment") (citation omitted); *see Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the nature and extent of treatment obtained). As noted by the ALJ, Plaintiff admitted that her symptoms are well controlled with Benadryl and she has an "Epi-pen, but . . . has never had to use it." (AR at 20; *see id.* at 30 (Plaintiff's testimony that "I have not used my Epi-pen" and "I've not had to because I, I stay on Benadryl[] . . . to offset the symptoms").)

Third, the ALJ properly relied on a lack of treatment in rejecting Plaintiff's subjective complaints of pain. (AR at 20 ("There is no evidence of emergency room treatment and little evidence of treatment in a medical office.")); *Johnson v. Shalala*, 60 F.3d 1428, 1433-34 (9th Cir. 1995). Here, the ALJ properly found that Plaintiff "had begun workup with an allergist," but she "never completed it." (AR at 20; *see id.* at 184 (treatment note, dated August 19, 2002, indicating that Plaintiff "[d]id begin workup with an allergist but never completed it").)

Plaintiff argues that the fact "that she has seen her family practitioner in lieu of an allergist was not explained in the record but cannot be presumed to have been due to a lack of severity of symptoms." (Joint Stip. at 18.) Plaintiff's argument is wanting. Plaintiff was provided an opportunity to testify regarding her treatment with an allergist. (*See* AR at 34.) She testified that she "recently made contact with a Dr. Molesky who is an allergist/immunologist who is willing to work with [her] to try to get a handle and to try to make [her] life more livable." (*Id.*) However, Plaintiff failed to explain why it took her approximately five years to "make contact" or seek treatment with an allergist in light of the extreme limitations she alleges, *e.g.*, she requires a work environment "with tile as opposed to carpeting on the floors, no new paint, no pesticides, and a source of fresh air," (Joint Stip. at 4), and "no contact" with "fumes from office machine[s], new clothes, auto exhaust," "cleaning

materials," "perfumes," "ink" and "highlighters." (AR at 179 (letter from Dr. Bramson, dated September 12, 2006, listing items that will "trigger" Plaintiff's allergies); *compare id.* at 28 (alleging onset date of January 2003) with *id.* at 23 (hearing date of January 23, 2008)); *cf. Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (claimant's failure to seek treatment due to inability to pay cannot support an adverse credibility termination).

Fourth, the ALJ properly discounted Plaintiff's subjective complaints as inconsistent with her conduct. (AR at 20-21); *see Thomas*, 278 F.3d at 958-59 (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony). Despite Plaintiff's allegations of "chemical sensitivities," (Joint Stip. at 3), and "difficulty sitting . . . or standing [for] any extended length of time," (AR at 31), the ALJ explained that Plaintiff "admitted that she drove her [grandchild] to and from school every day" and "reported that she went outside to help some teenagers shovel snow . . . , she walks her dog, she went on a four-day vacation with her husband via train to New Mexico" and "takes trips from her mountain community to San Bernardino where she shops." (*Id.* at 20-21.)

The Court finds that substantial evidence supports the ALJ's reasoning. (*See* AR at 35 (Plaintiff's testimony that her daily activities include driving her granddaughter to and from school, "some housework," and doing homework with her granddaughter), 38 (Plaintiff's testimony that it takes her "35 minutes" to drive from her home to San Bernardino where she shops or runs errands and makes this commute "once every couple weeks"), 313 (treatment note, dated March 2, 2007, reporting that Plaintiff was shoveling snow), 316-317 (treatment note, dated June 25, 2007, indicating Plaintiff reported she "is going on a very special vacation, which she is actually being allowed to hijack her husband away from work, . . . she'll be

7

taking a train to New Mexico, and the earth would probably fall apart if she weren't able to go on that").)

Thus, the ALJ provided legally sufficient reasons supported by substantial evidence for discounting Plaintiff's subjective complaints of pain.

B. Step-Two Determination

Plaintiff argues that "the ALJ's reasoning does not compel the conclusion that [Plaintiff's] chemical sensitivities do not amount to a legally severe impairment[ because Plaintiff] made clear in her testimony that the primary reason she cannot return to work is her hypersensitivity to environmental irritants, which includes such seemingly benign substances as new carpeting and paint as well as airborne irritants such as pesticides and perfumes." (Joint Stip. at 6-7.) Plaintiff further contends that the "ALJ's objections regarding [Plaintiff's] chemical sensitivity . . . seem to be based in his own doubts as to whether the condition truly exists at all." (*Id.* at 7.)

Plaintiff also argues that "the ALJ made no mention whatsoever of her bilateral carpal tunnel syndrome" and the "ALJ's total failure to have considered that impairment beyond step two of the disability analysis . . . . constitutes plain error." (Joint Stip. at 10-11.)

    1. Step-Two Inquiry Requires A "*De Minimus*" Threshold Showing

The threshold inquiry at step two is whether or not a claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). The step two inquiry is defined as "'a *de minimis* screening device to dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001, *as amended* Aug. 9, 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen*, 80 F.3d at 1289-90. "Important here, at the step two inquiry, is the requirement that the ALJ must consider *the combined effect* of all of the claimant's impairments on her ability to function, without regard to whether each

8

alone was sufficiently severe." *Id.* at 1290 (emphasis added).

"An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work."[3/] *Smolen*, 80 F.3d at 1290 (internal quotation marks and citation omitted). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28,[4/] 1985 WL 56856, at *3).

In addition, "if an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb*, 433 F.3d at 687 (quoting SSR 85-28, 1985 WL 56856, at *4) (brackets omitted).

### 2. The ALJ's Failure to Find Plaintiff's Allergies and Carpal Tunnel Syndrome Severe at Step Two Was Harmless Error

In light of the above, any error in the ALJ's failure to include allergies and carpal tunnel syndrome as part of Plaintiff's severe impairments at step two of the

---

[3/] "'Basic work activities' are defined as including such capabilities as use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting[.]" *Edlund*, 253 F.3d at 1159 (internal citations omitted).

[4/] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

analysis was harmless.  This Court's decision is grounded on four reasons.

First, step two was already resolved in Plaintiff's favor, *e.g.*, the ALJ found Plaintiff's "musculoskeletal system" disorder to be severe and properly continued the sequential decision making process until reaching a decision at step four. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (concluding any error ALJ committed at step two was harmless because the step was resolved in claimant's favor); *Taylor v. Astrue*, 2010 WL 2773337, at *2-*3 (D. Or. 2010) (any error in failing to designate plaintiff's additional impairments as not severe did not prejudice him at step two, as step two was resolved in plaintiff's favor because ALJ found plaintiff had demonstrated several impairments necessary to satisfy step two).

Second, even assuming the ALJ erred in overlooking to list both impairments as severe at step two, any error was harmless because the ALJ, in fact, considered Plaintiff's allergies and carpal tunnel syndrome while assessing her limitations.  (AR at 20-21); *see Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007, *as amended* Aug. 16, 2007) (concluding any failure to list bursitis as severe at step two was harmless error where ALJ considered functional limitations of bursitis at step four).  As discussed *supra* at § V.A.2, the ALJ explained that Plaintiff's allergies are well controlled with Benadryl.  The ALJ also determined that Plaintiff's carpal tunnel syndrome did not result in any functional limitations.  (*See* AR at 21 (Although Plaintiff "asked Dr. Bramson for a letter of disability stating that . . . carpal tunnel syndrome was really bad in both arms," Dr. Bramson only "cited diarrhea and allergies as the two conditions that preclude [Plaintiff] from working."), 232.)

Third, the ALJ properly evaluated the medical evidence and rejected Dr. Bramson's opinion – the only opinion upon which Plaintiff relies to substantiate her complaints of extreme chemical sensitivities.  (*See* Joint Stip. at 7-10.)  To that end, the ALJ adopted the opinion of examining physician and internist Nicholas N. Lin, M.D. ("Dr. Lin").  (*See* AR at 21-22.)  Dr. Lin's opinion was based on a physical examination, Plaintiff's medical history, and a review of the medical record.  (*Id.* at

159-64); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (An examining physician's opinion may constitute substantial evidence if the "nontreating physician relies on independent clinical findings that differ from the findings of the treating physician.") (internal citation omitted). The ALJ further found Dr. Bramson's opinion was unsupported by the objective evidence in the record, including Dr. Bramson's own treatment notes. (*See* AR at 21; *see, e.g., id.* at 139); *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings). Accordingly, the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Bramson's opinion.

Fourth, with respect to Plaintiff's carpal tunnel syndrome, the Court is persuaded that the ALJ considered all the medical evidence and properly concluded that Plaintiff does not suffer from carpal tunnel syndrome such that it would have more than a slight effect on her ability to perform basic work activities. Although Plaintiff was diagnosed with bilateral carpal tunnel syndrome by a treating physician on *one* occasion, (*see* AR at 302-03), *none* of her treating or examining physicians opined that Plaintiff's carpal tunnel syndrome imposed any functional limitations. (*See, e.g., id.* at 162 (upon physical examination of Plaintiff, Dr. Lin finding that the range of motion in Plaintiff's upper extremities, including shoulders, elbows, wrists and hands, are "normal"), 179-81, 342-43, 345-46.)

Further, a review of the record demonstrates that the only evidence supporting Plaintiff's allegations is her own complaints, which the ALJ properly rejected, as discussed *supra* at § V.A.2. (*See* AR at 36 (testimony that she cannot perform "any heavy lifting" due to carpal tunnel syndrome), 230 (Dr. Bramson's notation that Plaintiff reported her carpal tunnel was "acting up"), 232 (Dr. Bramson's notation that Plaintiff requested letter for disability due to carpal tunnel syndrome).)

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered

**AFFIRMING** the decision of the Commissioner denying benefits.

Dated: April 29, 2011                         _____
                                                            Hon. Jay C. Gandhi
                                                     United States Magistrate Judge